1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT E. LEE,

11          Petitioner,              No. CIV S-03-2197 LKK KJM P

12     vs.

13   MARK SHEPHERD, Warden,

14          Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16          This matter is proceeding on petitioner's third amended petition for writ of habeas

17   corpus filed under 28 U.S.C. § 2254.  On July 12, 2006, the court heard argument on

18   respondent's motion to dismiss.  Petitioner was represented by Matthew Alger, Esq.; respondent

19   was represented by Carlos Martinez, Deputy Attorney General.

20   A.  Procedural Background

21          Petitioner filed his original petition for a writ of habeas corpus on October 20,

22   2003.  Respondent filed a motion to dismiss, arguing that the petition was not timely filed under

23   the AEDPA's statute of limitations.  On August 5, 2004, the court issued findings and

24   recommendations recommending that the motion be denied.  These were adopted by the district

25   court on September 9, 2004.

26   /////

1

1    On October 6, 2004, petitioner filed a motion to stay the proceedings to allow him

2  to exhaust his state remedies on an unexhausted claim.  This court granted the stay on November

3  15, 2004.

4    On March 24, 2006, the court lifted the stay and ordered petitioner to file his third

5  amended petition.

6    On May 15, 2006, respondent filed a second motion to dismiss, again based on the

7  AEDPA statute of limitations and the intervening decision in Pace v. DiGuglielmo, 544 U.S. 408

8  (2005).

9  B.  The State Court Proceedings

10    On December 12, 2001, petitioner was sentenced to a total term of twenty-six

11  years in prison following his no contest plea to several counts of burglary and his admission that

12  he had suffered a prior conviction for a serious felony.  First Motion to Dismiss (MTD I), Ex. A

13  (Abstract of Judgment).

14    Petitioner did not directly appeal his conviction.

15    Petitioner's first challenge to his conviction was a "Notice of Motion and Motion

16  to Vacate Judgment.  Petition for Writ Error Coram Nobis," mailed to Sacramento County

17  Superior Court on September 6, 2002.  Opp'n to MTD I, Ex. 1 (Motion/Petition).  In a letter

18  dated October 31, 2002, Roland L. Candee, acting presiding judge of the Sacramento County

19  Superior Court informed petitioner that a claim of ineffective assistance of counsel must be

20  raised in a petition for a writ of habeas corpus.  Opp'n to MTD I, Ex. 2 (Letter from Judge

21  Candee).

22    Petitioner next filed a petition for a writ of habeas corpus in Sacramento County

23  Superior Court on December 31, 2002.  MTD I, Ex. C (superior court writ).  On January 23,

24  2003, the superior court denied the writ as untimely and on the merits.  MTD I, Ex. B (superior

25  court denial).

26  /////

2

1    Before the superior court issued its decision, petitioner filed a similar writ in the

2    California Supreme Court on January 8, 2003.  This latter writ was denied on July 30, 2003.

3    MTD I, Ex. C (Supreme Court denial, Supreme Court writ).

4    C.  Analysis

5    One of the changes the AEDPA made to the habeas statutes was to add a statute of

6    limitations for filing a habeas petition:

7    (d)(1) A 1-year period of limitation shall apply to an application for
     a writ of habeas corpus by a person in custody pursuant to the
8    judgment of a State court. The limitation period shall run from the
     latest of–
9
     (A) the date on which the judgment became final by the conclusion
10   of direct review or the expiration of the time for seeking such
     review;
11
     (B) the date on which the impediment to filing an application
12   created by State action in violation of the Constitution or laws of
     the United States is removed, if the applicant was prevented from
13   filing by such State action;

14   (C) the date on which the constitutional right asserted was initially
     recognized by the Supreme Court, if the right has been newly
15   recognized by the Supreme Court and made retroactively
     applicable to cases on collateral review; or
16
     (D) the date on which the factual predicate of the claim or claims
17   presented could have been discovered through the exercise of due
     diligence.
18
     (2) The time during which a properly filed application for State
19   post- conviction or other collateral review with respect to the
     pertinent judgment or claim is pending shall not be counted toward
20   any period of limitation under this subsection.

21   28 U.S.C. § 2244.

22   Because petitioner did not appeal his conviction, it was final at the expiration of

23   the sixty day period for filing the notice of appeal, on February 10, 2002.  Cal. Rules of Court,

24   31(d) (2002); Lewis v. Mitchell, 173 F. Supp. 2d 1057, 1060 (C.D. Cal. 2001).  Accordingly, the

25   AEDPA year began to run on February 11, 2002, and expired on February 11, 2003.  Fed. R. Civ.

26   P. 6(a) (excluding the day from which the period begins to run from the calculation of the time).

3

1   The Motion/Petition filed on September 6, 2002[1], stopped the AEDPA clock on day 207 of the

2   limitations period.  The limitations period began running again on November 1, 2002, after Judge

3   Candee issued his letter.  Fed. R. Civ. P. 6(a).  Absent further tolling, the statute of limitations

4   period would have expired on April 7, 2003.

5              During the litigation on the first motion to dismiss, respondent conceded that time

6   was tolled from December 31, 2002, when the writ for habeas corpus was filed in the superior

7   court, until July 30, 2003, when the Supreme Court denied the petition, a period of 211 days.

8   Respondent argued, however, that the original Motion/Petition did not toll the running of the

9   limitations period.  The court found that the motion was a properly filed collateral attack on

10  petitioner's conviction and thus operated to toll the limitations period.  August 5 Findings and

11  Recommendations at 4-6.

12             In the current motion, however, respondent no longer challenges the

13  Motion/Petition as a basis for tolling, but instead argues that the December 31, 2002 petition did

14  not toll the statute of limitations because the superior court's denial of that pleading as untimely

15  means that the petition was not timely filed.  As a result, he argues, the time between the denial

16  of the Motion/Petition and the denial of the superior court writ was similarly not tolled as a

17  result.  Respondent also argues that, consonant with Ylst v. Nunnemaker, 501 U.S. 797, 803

18  (1991), this court should presume that the California Supreme Court did not disregard the

19  superior court's finding of untimeliness when it issued its single-line denial.  In respondent's

20  view, then, the limitations period was tolled only fifty-five days while the Motion/Petition was

21  pending in the superior court, but was not tolled by the second superior court or Supreme Court

22  petitions or by the time between the filing of any of these pleadings.  Respondent thus argues that

23  /////

24

25             [1]  This is the date on the proof of service and the date the court thus assumes it was
    delivered to the prison authorities for mailing, a date which becomes the filing date under the rule
26  of Houston v. Lack, 487 U.S. 266, 276 (1988).

1   the statute of limitations expired by May 8, 2003, well before the initial federal petition was filed.

2            Petitioner argues that the original Motion/Petition is still pending because Judge

3   Candee's letter was not a decision, and that he is entitled to equitable tolling because of his

4   mental illness.

5            Neither position controls the resolution of the instant question.

6            In Artuz v. Bennett, 531 U.S. 4, 7-8 (2000), the Supreme Court held that a state

7   habeas petition will toll the federal statute of limitations only if it is properly filed in accordance

8   with the requirements of state law.  In Pace v. DiGuglielmo, 544 U.S. at 413, 417, the Supreme

9   Court held that "time limits, no matter their form, are 'filing' conditions,'" so that a petition

10  denied as untimely will not toll the statute of limitations.

11           Under Pace, the second superior court petition, explicitly denied as untimely, did

12  not toll the statute of limitations.  The remaining question is what effect, if any, this denial has on

13  the Supreme Court petition, which was denied in a one line order: "Petition for writ of habeas

14  corpus is DENIED."  MTD I, Lodged Doc. 3.

15           In Ylst v. Nunnemaker, the Supreme Court considered whether a one-line habeas

16  denial from the California Supreme Court had overturned a Court of Appeal's explicit finding

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

that petitioner's <u>Miranda</u> issue was procedurally defaulted.  The Court fashioned a rebuttable

presumption to address the question:

> Where there has been one reasoned state judgment rejecting a
> federal claim, later unexplained orders upholding that judgment or
> rejecting the same claim rest upon the same ground. . . .[W]here, as
> here, the last reasoned opinion on the claim explicitly imposed a
> procedural default, we will presume that a later decision rejecting
> the claim did not silently disregard that bar and consider the merits.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> The maxim is that silence implies consent, not the opposite–and
> courts generally behave accordingly, affirming without further
> discussion when they agree, not when they disagree, with the
> reasons given below.

501 U.S. at 803-04.  As the Court recognized, this presumption means that an unexplained order

leaves intact "a decision (or, in the case of habeas, the consequences of a decision)."  <u>Id</u>. at 804.

The Ninth Circuit has found the <u>Nunnemaker</u> "look-through" process to apply when considering

whether a reasoned, lower court finding of timeliness, followed by unexplained appellate court

denials of collateral relief, controls the determination whether the state action was properly filed.

<u>Bonner v. Carey</u>, 425 F.3d 1145, 1148 n.6 (9th Cir. 2005), <u>as amended by</u> 439 F.3d 993 (2006),

<u>cert. denied</u>, __ U.S. __, 127 S.Ct. 132 (2006).

This case, however, is complicated by the fact that petitioner did not proceed in an

orderly fashion through the levels of California collateral review.  Before he had received a

decision on the superior court petition, petitioner filed his petition in the Supreme Court.[2]  In the

body of that document, he did not mention that he was simultaneously seeking relief from the

superior court.  MTD I, Lodged. Doc. 3 at 6.  His exhibits include a petition addressed to the

superior court, along with a motion for reconsideration and a traverse to the petition, all dated

---

[2]  The Supreme Court petition is dated December 15, 2005, before the superior court
petition was mailed, but it does not appear to have been mailed before the superior court petition.
There is no proof of service attached to the Supreme Court petition and petitioner has presented
nothing showing when the petition was given to prison authorities for mailing.  Accordingly, the
court will use the January 8, 2003 filing date as the date for the Supreme Court petition.

1   December 31, 2002, plus a copy of the superior court's order of August 9, 2002, denying

2   petitioner's request for a transcript.  None of these documents necessarily alerted the Supreme

3   Court to the pendency of a similar writ in the superior court.  Even if the attached superior court

4   petition might alert the Supreme Court to the pendency of the lower court action, its utility was

5   destroyed by the fact that the other two documents—the motion for reconsideration and the

6   traverse—were dated the same day as the attached superior court petition.  These latter

7   documents thus appear more as extra argument presented by a pro per inmate in support of the

8   Supreme Court petition rather than a record of a previous action.  More important, none of these

9   exhibits alerted the Supreme Court to the superior court's January 23, 2003 determination that

10  the superior court petition was untimely.  Accordingly, there is no suggestion in the record that

11  the Supreme Court's unexplained ruling signaled its agreement with an order it had no reason to

12  know had been entered.  Moreover, because the Supreme Court did not deny the petition as

13  untimely, it was properly filed and tolled the AEDPA statute of limitations from January 8

14  through July 30, 2003.  See California Rules of Court Rule 29.4 (habeas is final on day CSC

15  issues order summarily denying it).

16         January 8, 2003, the date the Supreme Court petition was filed, was day 276 of the

17  limitations period.  When the limitations period began to run again, on July 31, 2003, 89 days

18  remained.  October 20, 2003, the date the original petition was filed, was day 82 of the remaining

19  limitations period.  The petition was timely.[3]

20         Accordingly, IT IS HEREBY RECOMMENDED that respondent's renewed

21  motion to dismiss be denied.

22  /////

23

24         [3] Accordingly, the court need not consider whether petitioner was entitled to "gap"
    tolling between the September 6 Motion/Petition and the January 8 Supreme Court petition.  See
25  Evans v. Chavis, 546 U.S. 189 (2006).  Moreover, the court need not address whether Judge
    Candee's letter constituted a decision nor whether petitioner's psychiatric problems support a
26  finding of equitable tolling.

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3    days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within ten days after service of the objections.  The parties are advised

7    that failure to file objections within the specified time may waive the right to appeal the District

8    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    DATED:  January 12, 2007.

U.S. MAGISTRATE JUDGE