IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT E. LEE,

    Petitioner,                    No. CIV S-03-2197 LKK KJM P

    vs.

MARK SHEPHERD, Warden,

    Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prison inmate proceeding with counsel with a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his Sacramento County conviction for burglary with its twenty-six year sentence.

I. Procedural History

        Proceeding pro se, petitioner filed a petition for a writ of habeas corpus on October 20, 2003. The court appointed counsel and granted leave to file an amended petition, but respondent filed a motion to dismiss before the amended petition was filed, arguing the petition was untimely. Docket Nos. 4, 10, 11.

/////

1

On August 5, 2004, this court recommended that the motion to dismiss be denied, a recommendation adopted by the district court on September 9, 2004. Docket Nos. 25, 30. Thereafter, counsel for petitioner filed an amended petition and a request for a stay of proceedings to allow him to exhaust state remedies. Docket Nos. 32, 33.

On November 15, 2004, the court granted the motion to stay, but directed petitioner to file a second amended petition containing only the then-exhausted claims. Docket No. 35.

On February 3, 2006, the court lifted the stay and directed petitioner to file his third amended petition. Docket No. 46. Thereafter, respondent filed a motion to dismiss, again arguing the petition was not timely. Docket No. 56. The court recommended that this motion be denied as well, a recommendation adopted by the district court. Docket Nos. 62, 63.

Respondent filed an answer and petitioner filed a traverse. Docket Nos. 65, 70.

II. Background

Petitioner was charged with four counts of first degree burglary and was alleged to have suffered four prior strike convictions. CT[1] 22-25.

On March 8, 2001, a doubt was declared as to petitioner's competence to stand trial and two doctors were appointed to evaluate him. CT 9. On March 29, 2001, the court found petitioner incompetent to stand trial and suspended proceedings. CT 10. On August 2, 2001, the court found petitioner competent and ordered the criminal proceedings reinstated. CT 12.

On September 7, 2001, defendant was in court for a hearing on the prosecutor's motion to amend the information, which was granted. 9/7/01 RT[2] 1-2. The court then asked defense counsel if petitioner was prepared to accept the proposed disposition counsel had discussed with the court. 9/7/01 RT 2. Counsel said that petitioner wanted to contact his family

---

[1] The Clerk's Transcript is Lodged Document 1.

[2] The September 2001 Reporter's Transcript is Lodged Document 2.

1  first. Id. The court told petitioner that if he were going to accept the offer, he had to do so then,

2  though sentencing could be continued for two weeks. 9/7/01 RT 3. When petitioner demurred,

3  saying he wanted to contact his family before agreeing to anything, the court said it would just

4  confirm the case for trial. Id. Petitioner then said he would take the twenty-two years. 9/7/01

5  RT 4. The prosecutor voiced his opposition to the disposition. Id.

6       The court then began the plea colloquy:

7       Mr. Lee, the agreement is that you will plead to your charges,
   which are four counts of burglary. You will admit your prior
8       serious felony convictions. You will receive a total of twenty-two
   years in state prison. And you will have to serve eighty-five
9       percent of the time.

10  9/7/01 RT 4.

11       The prosecutor then provided the factual basis of the charges, as outlined in the

12  complaint and the court elicited petitioner's waivers of his rights to a jury trial, to confront and

13  cross-examine the witnesses against him, to remain silent, to present a defense and present

14  witnesses in his behalf. 9/7/01 RT 5-7.

15       When the court asked if anyone had threatened petitioner, he responded "Yeah.

16  You all threatened me." 9/7/01 RT 8. The colloquy continued:

17       THE COURT: . . . .other than additional time in custody, has
   anybody threatened you. . . in order to get you to plead?
18

     THE DEFENDANT: Like I said, you all threatened me. You all
19       ain't given me no time to do ---

20       THE COURT: That's not a threat.

21       THE DEFENDANT: I know. It's a promise, ain't it?

22       THE COURT: Mr. Lee, I got a long calendar. You're going to
   plead today or you're going to go to trial next month.
23

     THE DEFENDANT: I already said I plead.
24

     THE COURT: All right. Then answer my questions. Have you
25       or anybody else been threatened in any way in order to get you to
   plea?
26

| | |
|---|---|
| 1 | THE DEFENDANT: No. |
| 2 | THE COURT: Are you currently under the influence of any alcohol, drug, narcotic or medication. |
| 3 | |
| 4 | THE DEFENDANT: Yes, I am under medication.<br>THE COURT: What are you taking? |
| 5 | THE DEFENDANT: I don't know the name of it.  Got to see the doctor about that. |
| 6 | |
| 7 | THE COURT: Mr. Foster, are you familiar with his medications? |
| 8 | MR. FOSTER: I understand he may be on some psych-related medications since his return from the state hospital. . . . |
| 9 | THE COURT: All right.   Mr. Lee, I'm not asking you if you're taking anything.  I'm asking you if you're under the influence of anything such that you cannot think clearly today. |
| 10 | |
| 11 | THE DEFENDANT: Yes. |
| 12 | THE COURT: Well, then, there goes your plea.  We'll see you for trial. |
| 13 | |

9/7/01 RT 8-9.

Pretrial motions were heard on December 11, 2001 and thereafter, petitioner rejected the "court's offer [of] 26 yrs." CT 18, 21.  When the parties returned to court the next day for jury selection, the court noted:

> I want to make sure we put some things on the record.  We had some discussions yesterday at Home Court that are not on . . . the record . . . .We discussed further settlement in this case.  His maximum exposure is –
>
> MR. WELLS:  As charged, 110 to life.
>
> THE COURT: One hundred and ten years to life.  All right.  And this offer – the offer was?
>
> MR. WELLS: The offer from the People has been throughout and continues to be 25 to life.
>
> THE COURT: Twenty-five to life.  We'll get that with the Court would have to strike some priors?

/////

4

1  MR. WELLS: Actually, the People would dismiss, I guess, with Harvey waivers, some of the counts. He would plead to a remainder for a total of 25 to life.

2  

3  THE COURT: The Court had an alternative offer, as well. All right, this offer has been conveyed to Mr. Lee. We discussed it yesterday at the Home court, and we took some more time yesterday at the . . . in the Home court and discussed it. He wanted to go back to his home court to Judge Ure where he was offered 22 years, evidently, awhile back. I don't know whether that was months ago, or whenever, but he was offered that at one time.

4  

5  

6  

7  That offer was withdrawn. When it went out to trial yesterday, he wanted to go back to that offer. I explained to him we don't back up cases, that's not possible, especially after we already have a jury panel, already introduced them and started picking the jury.

8  

9  

10  At that point Mr. Lee took some more time to think about it, and said he was not interested in the offer of 25 to life, and wanted his jury trial.

11  

12  12/12/01 RT[3] 2-4. Defense counsel then said that petitioner was willing to resolve the case for a

13  total term of twenty-six years, which would involve striking the strike priors. 12/12/01 RT 4.

14  Although the prosecutor maintained that the appropriate disposition was twenty-five to life, he

15  did not strenuously object to the court's proposal to impose a determinate twenty-six year

16  sentence in exchange for petitioner's guilty plea. 12/12/01 RT 4, 6. Thereafter petitioner entered

17  no contest pleas after waiving his constitutional rights and admitting his serious felony priors.

18  12/12/01 RT 11-18. He was sentenced that day to the bargained-for term of years. 12/12/01 RT

19  22-26.

20  Petitioner did not directly appeal his conviction, but filed a petition for a writ of

21  habeas corpus in Sacramento County Superior Court on December 31, 2002, and a similar writ in

22  the California Supreme Court on January 8, 2003. This latter writ was denied in a single line

23  order on July 30, 2003. See Lodged Docs. 2, 3, 4, 5.

24  /////

25  

26  [3] The December 2001 Reporter's Transcript is Lodged Document 3.

5

1    The exhaustion petition undertaken after this court granted the stay was filed in
2 the California Supreme Court on December 27, 2004 and raised two issues: that petitioner's due
3 process rights were violated when the trial court reneged on the plea agreement for twenty-two
4 years and that petitioner was denied the effective assistance of counsel because counsel did
5 nothing to preserve the twenty-two year deal.  Lodg. Doc. 6.  The court denied the petition with a
6 citation to In re Clark, 5 Cal.4th 750 (1993).  Id.

7    The third amended petition raises three grounds:  the trial court violated
8 petitioner's Fourteenth Amendment rights when it reneged on the twenty-two year plea
9 agreement, counsel was ineffective in failing to preserve this plea offer, and counsel was
10 ineffective in failing to investigate whether petitioner was competent to enter his no contest
11 pleas.  Third Amended Petition (Third Am. Pet.) at 5-6.

12   Respondent admits that the claims are exhausted, but argues that the first two are
13 barred by a procedural default and also are without merit.  Answer at 2.

14 III.  The Twenty-Two Year Offer

15   Petitioner argues that the trial court violated petitioner's rights when it withdrew
16 its offer in the middle of the plea colloquy.  Third Am. Pet. at 5.  Respondent argues the Supreme
17 Court's reliance on In re Clark to deny the petition means that this claim is procedurally barred.

18   A court need not invariably resolve the question of procedural default prior to
19 ruling on the merits of a claim where the default issue turns on difficult questions of state law.
20 Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997).  In this case, the court declines to reach the
21 procedural issue because petitioner's claim fails on the merits, even on this court's de novo
22 review.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

23   Petitioner relies largely on Santobello v. New York, 404 U.S. 257, 262 (1971),
24 which held that "when a plea rests in any significant degree on a promise or agreement of the
25 prosecutor, so that it can be said to be part of the inducement or consideration, such promise
26 must be fulfilled."  Mem. P. & A. In Supp. Third Am. Pet. (Mem. P. & A.) at 6; Traverse at 10.

1 Respondent counters that the trial court properly withdrew its offer when petitioner said he was
2 under the influence of medication. Answer at 11.

3       Petitioner characterizes what occurred on September 7, 2001 as a plea agreement;
4 respondent describes it as an offer withdrawn by the court. Cf. Mem. P. & A. at 6-9 with Answer
5 at 11-12. Yet petitioner was prepared to plead to the entire charging document with the
6 understanding that the court would thereafter sentence him to a term of twenty-two years; this
7 was over the prosecutor's objection that the proper disposition of the case was a three strikes
8 term. In California,

> 9 where the defendant pleads guilty to all charges, all that remains is
> the pronouncement of judgment and sentencing; there is no
> 10 requirement that the People consent to a guilty plea. In that
> situation, the trial court may give an 'indicated sentence' which
> 11 falls within the 'boundaries of the court's inherent sentencing
> powers.'
12

13 People. v. Vessell, 36 Cal.App.4th 285, 296 (1995) (internal citations omitted); see also In re
14 Morgan, 506 F.3d 705, 712 (9th Cir. 2007) (discussing difference between charge and sentence
15 bargains). Petitioner has cited nothing suggesting that petitioner has any constitutional right to
16 enforce the trial court's indicated sentence.

17       Petitioner has not established any basis for habeas relief even if what occurred is
18 interpreted as a plea bargain. Both parties cite to Santobello, but neither addresses that court's
19 recognition that "[t]here is, of course, no absolute right to have a guilty plea accepted." 404 U.S.
20 at 262; see also North Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970) ("[o]ur holding does not
21 mean that a trial judge must accept every constitutionally valid guilty plea merely because a
22 defendant wishes so to plead. A criminal defendant does not have an absolute right under the
23 Constitution to have his guilty plea accepted by the court, although the States may by statute or
24 otherwise confer such a right."); Weatherford v. Bursey, 429 U.S. 545, 561 (1977) ([T]here is no
25 constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a
26 /////

novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty.").

The Supreme Court examined this idea more fully in Mabry v Johnson, 467 U.S. 504 (1984). In that case, the prosecutor extended a plea offer to defendant's counsel, who in turn communicated it to his client, who agreed to accept it. Defense counsel called the prosecutor to let him know that defendant had accepted the offer; however, the prosecutor said a mistake had been made and withdrew the offer. Defendant refused to accept the prosecutor's revised plea offer and stood trial; on the second day of trial, plea negotiations resumed and defendant pleaded guilty on terms less favorable than the prosecutor had offered originally. Id. at 506. Defendant ultimately filed a federal habeas petition contending that his federal constitutional rights had been violated when the prosecutor withdrew the initial plea offer.

The Supreme Court disagreed:

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

Id. at 507-08. The Court also found respondent's ultimate plea not to be a product of the earlier withdrawn offer, for he pleaded guilty knowing what sentence the prosecutor would recommend. Id. at 510.

The federal courts have followed Mabry's teaching. In Hall v. Luebbers, 341 F.3d 706 (8th Cir. 2003), the court rejected the petitioner's claim that his rights were violated when he accepted the prosecutor's offer and took a polygraph examination in reliance on that offer before the prosecutor withdrew it. Relying on Mabry, the court said "[i]f the defendant has not pled guilty or the trial court has not accepted a plea and entered judgment, the defendant has not been deprived of his constitutional rights." Id. at 716. See also United States v. Savage, 978 F.2d

1136, 1138 (9th Cir. 1992) (neither the government nor the defendant is bound by a plea agreement until it is approved by the court); United States v. Norris, 486 F.3d 1045 (8th Cir. 2007) (government allowed to withdraw from plea agreement even though petitioner had admitted guilt during the plea colloquy because district court did not accept the plea; no showing that government took unfair advantage of the admission).

      In his traverse, petitioner relies on the notion that plea agreements are contractual in nature and cites definitions from the Civil Code in support of his argument that he entered into an enforceable contract with the trial court in September 2001. Traverse at 7-10. However, even the California courts have held that plea agreements are not binding until the defendant pleads guilty or detrimentally relies on the bargain. Riggs v. Fairman, 399 F.3d 1179, 1185 (9th Cir. 2005). Thus, in People v. Thornton, 137 Cal.App.4th 241 (2006), the state Court of Appeal considered the People's appeal of a trial court order directing specific performance of a plea bargain. In that case, the defendant had waived time for preliminary hearing and filled out a plea form in reliance on the plea offer he had accepted. After the prosecutor withdrew the offer, the trial court granted defendant's motion for specific enforcement of the agreement. The Court of Appeal reversed, holding that a defendant is not entitled to specific enforcement of an agreement that is withdrawn before it is accepted in open court, unless there has been detrimental reliance. It found that neither defendant's agreeing to waive time for the preliminary hearing nor his filling out the plea form constituted detrimental reliance, because the form "was not entered in the court records" and defendant "did not make admissions in open court." Id. at 250. See also People v. Rhoden, 75 Cal.App.4th 1346, 1355-56 (1999) (no error when prosecutor withdrew from plea bargain before defendant pleaded guilty or otherwise detrimentally relied on the bargain even when defendant had filled out the plea form); compare In re Kenneth H., 80 Cal.App.4th 143 (2000) (prosecutor bound by agreement even though it was withdrawn before accepted by the court when minor relied detrimentally on it by taking polygraph). California law does not advance petitioner's argument.

In this case, petitioner began the plea colloquy but did not make any admissions or enter his plea before the proceedings were aborted. He has not suggested he relied on the agreement in taking any actions to his detriment. He has not shown an entitlement to relief under federal law nor shown that he had any entitlement under state law to insist on resurrection of the trial court's earlier indicated sentence.

Finally, petitioner argues the state trial court had an obligation to ensure that petitioner was able to enter the plea, either by determining whether he could go without his medication or whether he nevertheless understood the nature and consequences of his plea despite his medication. Mem. P. & A. at 7. He relies on Moran v. Godinez, 40 F.3d 1567 (9th Cir. 1994), as amended on denial of rehearing, 57 F.3d 690 (9th Cir. 1994). In Moran, however, the trial court accepted a guilty plea to three counts of capital murder without making any inquiry about the type of medication or its effect on the defendant's ability to understand the plea proceedings after the defendant said he was taking "just what they give me in, you know, medications." Moran, 40 F.3d at 1570. In the instant case, in contrast, the court asked petitioner about his medications and, when he could not name them, asked counsel. The court then asked petitioner if the medications interfered with his ability to think clearly; when he said they did, the court declined to accept the plea, a result the Moran court likely would have applauded. 9/7/01 RT 8-9. The Moran court simply does not impose any duty on the trial court to salvage a plea once it decides a criminal defendant's medication might be interfering with his ability to enter a plea. Moreover, petitioner has not cited and the court has not found any case law requiring a trial court to be proactive in the manner petitioner suggests in order to save a plea agreement.

/////
/////
/////
/////
/////

IV. Ineffective Assistance Of Counsel

The federal law on claims of attorney ineffectiveness is clear:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

It is also petitioner's burden to establish prejudice: "A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

A. Failure To Preserve The Twenty-Two Year Offer/Indicated Sentence

As noted, the Supreme Court denied the petition raising this ground with a citation to In re Clark, 5 Cal. 4th 750. Lodg. Doc. 6. Here as well, this court declines to reach the procedural issue because in its de novo review of the claim, it finds the claim to be without substance.

Petitioner contends trial counsel was ineffective for failing to continue the change of plea hearing in order to secure a "professional medical opinion" on the question "whether

11

petitioner could validly enter . . . pleas despite his medication" or ask for a hearing on the question whether the medication affected petitioner's cognitive abilities. . . ." Mem. P. & A. at 12. He says if such measures had been taken, the offer "likely would have been held open." Id. Respondent counters that such arguments are based on the sort of hindsight this court may not use in evaluating trial counsel's performance, and that petitioner has not demonstrated prejudice.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court said:

> . . . the "prejudice" component of the *Strickland* test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.

Id. at 372 (internal citations omitted). Because petitioner has no constitutional right to a plea bargain, counsel's alleged failure to take steps to ensure he received the twenty-two year deal does not satisfy the Strickland standard for prejudice. See also Post v. Page, 22 F.Supp.2d 887 (C.D. Ill. 1998) (counsel's failure to transmit client's offer to the prosecutor not ineffective when there is no right to have his offer accepted).

In United States v. Weaver, 882 F.2d 1128, 1137 (7th Cir. 1989), the defendant argued that counsel was ineffective for failing to enforce "an agreement to agree" to a plea bargain. The Court of Appeals found that counsel was not ineffective, however, because the plea negotiations had not resulted in an enforceable agreement; it noted that "plea negotiations themselves generally cannot be enforced." In this case as well, counsel's alleged failure does not constitute ineffective assistance because there was nothing enforceable. See also United States v. Springs, 988 F.2d 746, 749 (7th Cir. 1993) ("The Constitution does not ensure that lawyers will be good negotiators, locking in the best plea bargains available.").

Even assuming there was a right to a plea bargain, petitioner has not demonstrated as a factual matter that counsel could have saved the court's willingness to extend its sentencing determination by asking for a hearing on petitioner's ability to enter a plea despite his

medications. The court was adamant that the case settle that day: "you either accept it or you can have your trial." 9/7/01 RT 3. When petitioner sought to postpone the plea so he could "contact [his] people," the court responded, "we're confirming your matter for trial." Id. The prosecutor, who had opposed this resolution, asked "[i]s the Court's offer withdrawn. . . ." 9/7/01 RT 3-4. Petitioner chimed in then and said he would take the twenty-two years. 9/7/01 RT 4. During the colloquy, when petitioner suggested that "you all" had threatened him, the court reminded him that he could plead that day or go to trial the next month. 9/7/01 RT 8.

The tenor of the proceedings on September 7, 2001 suggests the court would not have granted a motion for a hearing and would not have otherwise continued the proceedings to explore the impact of the medication on petitioner's understanding. If there was an agreement, one of its terms was that it be accepted that day. Petitioner has not demonstrated his counsel was ineffective for failing to ensure that the twenty-two year offer was accepted.

B. Failure To Investigate Competence To Plead On December 12, 2001

Petitioner argues that trial counsel also was ineffective in failing to investigate whether medication rendered petitioner incompetent to enter the no contest pleas on December 12, 2001. Mem. P. & A. at 13. Because the California Supreme Court did not issue a reasoned denial of this claim, the court undertakes an independent review of this question. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

In United States v. Howard, 381 F.3d 873 (9th Cir. 2004), the Ninth Circuit considered whether the movant in the proceeding under 28 U.S.C. § 2255 had demonstrated his entitlement to an evidentiary hearing on his claim that counsel was ineffective in allowing him to accept a plea agreement while he was incompetent as the result of his use of powerful narcotic pain relievers.

/////
/////
/////

1  The court observed:

> To establish that his counsel provided ineffective assistance in light of Howard's alleged incompetency, Howard must first demonstrate that he was indeed incompetent to plead guilty.

Id. at 877-78. It continued:

> When a § 2255 petitioner's claim of incompetence due to the ingestion of drugs is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing. When the allegations move beyond bald, conclusory or incredible assertions, however, a hearing is required unless the petition, files and record conclusively demonstrate that the petitioner was competent to plead guilty. Specific, credible evidence that an individual was under the influence of powerful narcotic drugs suffices to move a claim beyond a bald assertion of incompetence.

Id. at 879; see also Miles v. Stainer, 108 F.3d 1109 (9th Cir. 1997) (counsel not ineffective for failing to raise question of petitioner's competence when she had discussed agreement when petitioner was competent and she did not want to jeopardize beneficial plea bargain).

Petitioner does not present even conclusory claims of incompetence. First, during the plea colloquy, petitioner said he was not under the influence of any drugs. 12/12/01 RT 12:6-8. Second, petitioner has submitted no jail or other medical records showing that petitioner was taking any medication, much less medications that might render him incompetent to plead guilty. Third, petitioner has not submitted his own declaration or any other evidence suggesting he was suffering any confusion or other ill-effects during the plea colloquy so as to undercut his competence to enter the plea. The only evidence petitioner has submitted in support of this claim is a copy of the order committing him to a state hospital for an evaluation of his competence to stand trial. Third Am. Pet., Ex. 3. This order says nothing about the specifics of petitioner's mental state or any medications he might have been taking. Petitioner has not presented copies of the actual reports with any recommendations about a medication regime. This court's independent review of this conclusory claim shows petitioner is not entitled to relief.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

1   These findings and recommendations are submitted to the United States District
2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3   days after being served with these findings and recommendations, any party may file written
4   objections with the court and serve a copy on all parties.  Such a document should be captioned
5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6   shall be served and filed within ten days after service of the objections.  The parties are advised
7   that failure to file objections within the specified time may waive the right to appeal the District
8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9   DATED: September 13, 2009.

_____
U.S. MAGISTRATE JUDGE

2

lee2197.157