1

2

3

4

5

6

7

8

9

10          IN THE UNITED STATES DISTRICT COURT

11          FOR THE EASTERN DISTRICT OF CALIFORNIA

12   ROBERT E. LEE,

13          Petitioner,              No. CIV S-03-2197 LKK KJM P

14   vs.

15   MARK SHEPHERD, Warden,          ORDER AND SUPERSEDING

16          Respondent.              FINDINGS AND RECOMMENDATIONS

17   _____/

18          Petitioner is a state prison inmate proceeding with counsel on a petition for a writ

19   of habeas corpus under 28 U.S.C. § 2254, challenging his Sacramento County conviction for

20   burglary with its twenty-six year sentence.

21   I.  Procedural History

22          Proceeding pro se, petitioner filed a petition for a writ of habeas corpus on

23   October 20, 2003.  The court appointed counsel and granted leave to file an amended petition,

24   but respondent filed a motion to dismiss before the amended petition was filed, arguing the

25   petition was untimely.  Docket Nos. 4, 10, 11.

26   /////

1

1    On August 5, 2004, this court recommended that the motion to dismiss be denied,

2 a recommendation adopted by the district court on September 9, 2004.  Docket Nos. 25, 30.

3 Thereafter, counsel for petitioner filed an amended petition and a request for a stay of

4 proceedings to allow him to exhaust state remedies.  Docket Nos. 32, 33.

5    On November 15, 2004, the court granted the motion to stay, but directed

6 petitioner to file a second amended petition containing only the then-exhausted claims.  Docket

7 No. 35.

8    On February 3, 2006, the court lifted the stay and directed petitioner to file his

9 third amended petition.  Docket No. 46.  Thereafter, respondent filed a motion to dismiss, again

10 arguing the petition was not timely.  Docket No. 56.  The court recommended that this motion be

11 denied as well, a recommendation adopted by the district court.  Docket Nos. 62, 63.

12    Respondent filed an answer and petitioner filed a traverse.  Docket Nos. 65, 70.

13    On September 14, 2009, this court recommended that the petition be denied.

14 Petitioner's counsel filed objections, which have prompted this court to vacate its earlier findings

15 and issue these superseding findings and recommendations.

16 II.  Background

17    Petitioner was charged with four counts of first degree burglary and was alleged to

18 have suffered four prior strike convictions.  CT[1] 22-25.

19    On March 8, 2001, a doubt was declared as to petitioner's competence to stand

20 trial and two doctors were appointed to evaluate him.  CT 9.  On March 29, 2001, the court found

21 petitioner incompetent to stand trial and suspended proceedings.  CT 10.  On August 2, 2001, the

22 court found petitioner competent and ordered the criminal proceedings reinstated.  CT 12.

23 /////

24 /////

25

26    [1]  The Clerk's Transcript is Lodged Document 1.

1      On September 7, 2001, defendant was in court for a hearing on the prosecutor's

2   motion to amend the information, which was granted.  9/7/01 RT[2] 1-2.  The court then asked

3   defense counsel if petitioner was prepared to accept the proposed disposition counsel had

4   discussed with the court.  9/7/01 RT 2.  Counsel said that petitioner wanted to contact his family

5   first.  Id.  The court told petitioner that if he were going to accept the offer, he had to do so then,

6   though sentencing could be continued for two weeks.  9/7/01 RT 3.  When petitioner demurred,

7   saying he wanted to contact his family before agreeing to anything, the court said it would just

8   confirm the case for trial.  Id.  Petitioner then said he would take the twenty-two years.  9/7/01

9   RT 4.  The prosecutor voiced his opposition to the disposition.  Id.

10      The court then began the plea colloquy:

11          Mr. Lee, the agreement is that you will plead to your charges,
            which are four counts of burglary.  You will admit your prior
12          serious felony convictions.  You will receive a total of twenty-two
            years in state prison.  And you will have to serve eighty-five
13          percent of the time.

14   9/7/01 RT 4.

15      The prosecutor then provided the factual basis of the charges, as outlined in the

16   complaint and the court elicited petitioner's waivers of his rights to a jury trial, to confront and

17   cross-examine the witnesses against him, to remain silent, to present a defense and present

18   witnesses in his behalf.  9/7/01 RT 5-7.

19      When the court asked if anyone had threatened petitioner, he responded "Yeah.

20   You all threatened me."  9/7/01 RT 8.  The colloquy continued:

21          THE COURT: . . . .other than additional time in custody, has
            anybody threatened you. . . in order to get you to plead?
22
            THE DEFENDANT:  Like I said, you all threatened me.  You all
23          ain't given me no time to do ---

24          THE COURT: That's not a threat.

25   _____

26      [2]  The September 2001 Reporter's Transcript is Lodged Document 2.

3

1        THE DEFENDANT: I know.  It's a promise, ain't it?

2        THE COURT: Mr. Lee, I got a long calendar.  You're going to
         plead today or you're going to go to trial next month.
3
         THE DEFENDANT: I already said I plead.
4
         THE COURT:   All right.  Then answer my questions.  Have you
5        or anybody else been threatened in any way in order to get you to
         plea?
6
         THE DEFENDANT: No.
7
         THE COURT: Are you currently under the influence of any
8        alcohol, drug, narcotic or medication.

9        THE DEFENDANT: Yes, I am under medication.

10       THE COURT: What are you taking?

11       THE DEFENDANT: I don't know the name of it.  Got to see the
         doctor about that.
12
         THE COURT: Mr. Foster, are you familiar with his medications?
13
         MR. FOSTER: I understand he may be on some psych-related
14       medications since his return from the state hospital. . . .

15       THE COURT: All right.   Mr. Lee, I'm not asking you if you're
         taking anything.  I'm asking you if you're under the influence of
16       anything such that you cannot think clearly today.

17       THE DEFENDANT: Yes.

18       THE COURT: Well, then, there goes your plea.  We'll see you for
         trial.
19

20   9/7/01 RT 8-9.

21            Pretrial motions were heard on December 11, 2001, and thereafter, petitioner

22   rejected the "court's offer [of] 26 yrs."  CT 18, 21.  When the parties returned to court the next

23   day for jury selection, the court noted:

24            I want to make sure we put some things on the record.  We had
              some discussions yesterday at Home Court that are not on . . . the
25            record . . . .We discussed further settlement in this case.  His
              maximum exposure is –
26

                                                  4

MR. WELLS:  As charged, 110 to life.

THE COURT: One hundred and ten years to life.  All right.  And this offer – the offer was?

MR. WELLS: The offer from the People has been throughout and continues to be 25 to life.

THE COURT: Twenty-five to life.  We'll get that with the Court would have to strike some priors?

MR. WELLS: Actually, the People would dismiss, I guess, with Harvey waivers, some of the counts.  He would plead to a remainder for a total of 25 to life.

THE COURT: The had an alternative offer, as well.  All right, this offer has been conveyed to Mr. Lee.  We discussed it yesterday at the Home court, and we took some more time yesterday at the . . . in the Home court and discussed it.  He wanted to go back to his home court to Judge Ure where he was offered 22 years, evidently, awhile back.  I don't know whether that was months ago, or whenever, but he was offered that at one time.

That offer was withdrawn.  When it went out to trial yesterday, he wanted to go back to that offer.  I explained to him we don't back up cases, that's not possible, especially after we already have a jury panel, already introduced them and started picking the jury.

At that point Mr. Lee took some more time to think about it, and said he was not interested in the offer of 25 to life, and wanted his jury trial.

12/12/01 RT[3] 2-4.  Defense counsel then said that petitioner was willing to resolve the case for a total term of twenty-six years, which would involve striking the strike priors.  12/12/01 RT 4.  Although the prosecutor maintained that the appropriate disposition was twenty-five to life, he did not strenuously object to the court's proposal to impose a determinate twenty-six year sentence in exchange for petitioner's guilty plea.  12/12/01 RT 4, 6.  Thereafter petitioner entered no contest pleas after waiving his constitutional rights and admitting his serious felony priors.  12/12/01 RT 11-18.  He was sentenced that day to the bargained-for term of years.  12/12/01 RT 22-26.

---

[3]  The December 2001 Reporter's Transcript is Lodged Document 3.

1    Petitioner did not directly appeal his conviction, but filed a petition for a writ of

2 habeas corpus in Sacramento County Superior Court on December 31, 2002, and a similar writ in

3 the California Supreme Court on January 8, 2003.  This latter writ was denied in a single line

4 order on July 30, 2003.  See Lodged Docs. 2, 3, 4, 5.

5    The exhaustion petition undertaken after this court granted the stay was filed in

6 the California Supreme Court on December 27, 2004, and raised two issues: that petitioner's due

7 process rights were violated when the trial court reneged on the plea agreement for twenty-two

8 years and that petitioner was denied the effective assistance of counsel because counsel did

9 nothing to preserve the twenty-two year deal.  Lodg. Doc. 6.  The court denied the petition with a

10 citation to In re Clark, 5 Cal.4th 750 (1993).  Id.

11    The third amended petition raises three grounds:  the trial court violated

12 petitioner's Fourteenth Amendment rights when it reneged on the twenty-two year plea

13 agreement, counsel was ineffective in failing to preserve this plea offer, and counsel was

14 ineffective in failing to investigate whether petitioner was competent to enter his no contest

15 pleas.  Third Amended Petition (Third Am. Pet.) at 5-6.

16    Respondent admits the claims are exhausted, but argues that the first two are

17 barred by a procedural default and also are without merit.  Answer at 2.

18 III.  The Twenty-Two Year Offer

19    Petitioner argues that the trial court violated petitioner's rights when it withdrew

20 its offer in the middle of the plea colloquy.  Third Am. Pet. at 5.  Respondent argues the Supreme

21 Court's reliance on In re Clark to deny the petition means that this claim is procedurally barred.

22    A court need not invariably resolve the question of procedural default prior to

23 ruling on the merits of a claim where the default issue turns on difficult questions of state law.

24 Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997).  In this case, the court declines to reach the

25 procedural issue because petitioner's claim fails on the merits, even on this court's de novo

26 review.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

6

1            Petitioner relies largely on <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971),

2 which held that "when a plea rests in any significant degree on a promise or agreement of the

3 prosecutor, so that it can be said to be part of the inducement or consideration, such promise

4 must be fulfilled."  Mem. P. & A. In Supp. Third Am. Pet. (Mem. P. & A.) at 6; Traverse at 10.

5 Respondent counters that the trial court properly withdrew its offer when petitioner said he was

6 under the influence of medication.  Answer at 11.

7            Petitioner characterizes what occurred on September 7, 2001 as a plea agreement;

8 respondent describes it as an offer withdrawn by the court.  <u>Cf.</u> Mem. P. & A. at 6-9 <u>with</u> Answer

9 at 11-12.  Yet petitioner was prepared to plead to the entire charging document with the

10 understanding that the court would thereafter sentence him to a term of twenty-two years; this

11 was over the prosecutor's objection that the proper disposition of the case was a three strikes

12 term.  In California,

> where the defendant pleads guilty to all charges, all that remains is
> the pronouncement of judgment and sentencing; there is no
> requirement that the People consent to a guilty plea.  In that
> situation, the trial court may give an 'indicated sentence' which
> falls within the 'boundaries of the court's inherent sentencing
> powers.'

17 <u>People. v. Vessell</u>, 36 Cal.App.4th 285, 296 (1995) (internal citations omitted); <u>see also</u> <u>In re</u>

18 <u>Morgan</u>, 506 F.3d 705, 712 (9th Cir. 2007) (discussing difference between charge and sentence

19 bargains).  Petitioner has cited nothing suggesting that petitioner has any constitutional right to

20 enforce the trial court's indicated sentence.

21            Petitioner has not established any basis for habeas relief even if what occurred is

22 interpreted as a plea bargain.  Both parties cite to <u>Santobello</u>, but neither addresses that court's

23 recognition that "[t]here is, of course, no absolute right to have a guilty plea accepted."  404 U.S.

24 at 262; <u>see also</u> <u>North Carolina v. Alford</u>, 400 U.S. 25, 38 n.11 (1970) ("[o]ur holding does not

25 mean that a trial judge must accept every constitutionally valid guilty plea merely because a

26 defendant wishes so to plead.  A criminal defendant does not have an absolute right under the

1   Constitution to have his guilty plea accepted by the court, although the States may by statute or

2   otherwise confer such a right."); <u>Weatherford v. Bursey</u>, 429 U.S. 545, 561 (1977) ([T]here is no

3   constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.  It is

4   a novel argument that constitutional rights are infringed by trying the defendant rather than

5   accepting his plea of guilty.").

6        The Supreme Court examined this idea more fully in <u>Mabry v Johnson</u>, 467 U.S.

7   504 (1984).  In that case, the prosecutor extended a plea offer to defendant's counsel, who in turn

8   communicated it to his client, who agreed to accept it.  Defense counsel called the prosecutor to

9   let him know that defendant had accepted the offer; however, the prosecutor said a mistake had

10  been made and withdrew the offer.  Defendant refused to accept the prosecutor's revised plea

11  offer and stood trial; on the second day of trial, plea negotiations resumed and defendant pleaded

12  guilty on terms less favorable than the prosecutor had offered originally.  <u>Id</u>. at 506.  Defendant

13  ultimately filed a federal habeas petition contending that his federal constitutional rights had been

14  violated when the prosecutor withdrew the initial plea offer.

15        The Supreme Court disagreed:

16        A plea bargain standing alone is without constitutional
          significance; in itself it is a mere executory agreement which, until
17        embodied in the judgment of a court, does not deprive an accused
          of liberty or any other constitutionally protected interest.  It is the
18        ensuing guilty plea that implicates the Constitution.  Only after
          respondent pleaded guilty was he convicted, and it is that
19        conviction which gave rise to the deprivation of respondent's
          liberty at issue here.
20

21  <u>Id</u>. at 507-08.  The Court also found respondent's ultimate plea not to be a product of the earlier

22  withdrawn offer, for he pleaded guilty knowing what sentence the prosecutor would recommend.

23  <u>Id</u>. at 510.

24        The federal courts have followed <u>Mabry</u>'s teaching.  In <u>Hall v. Luebbers</u>, 341 F.3d

25  706 (8th Cir. 2003), the court rejected the petitioner's claim that his rights were violated when he

26  accepted the prosecutor's offer and took a polygraph examination in reliance on that offer before

the prosecutor withdrew it.  Relying on <u>Mabry</u>, the court said "[i]f the defendant has not pled guilty or the trial court has not accepted a plea and entered judgment, the defendant has not been deprived of his constitutional rights." <u>Id</u>. at 716.  <u>See also</u> <u>United States v. Savage</u>, 978 F.2d 1136, 1138 (9th Cir. 1992) (neither the government nor the defendant is bound by a plea agreement until it is approved by the court); <u>United States v. Norris</u>, 486 F.3d 1045 (8th Cir. 2007) (government allowed to withdraw from plea agreement even though petitioner had admitted guilt during the plea colloquy because district court did not accept the plea; no showing that government took unfair advantage of the admission).

In his traverse, petitioner relies on the notion that plea agreements are contractual in nature and cites definitions from the Civil Code in support of his argument that he entered into an enforceable contract with the trial court in September 2001.  Traverse at 7-10.  However, even the California courts have held that plea agreements are not binding until the defendant pleads guilty or detrimentally relies on the bargain.  <u>Riggs v. Fairman</u>, 399 F.3d 1179, 1185 (9th Cir. 2005).  Thus, in <u>People v. Thornton</u>, 137 Cal.App.4th 241 (2006), the state Court of Appeal considered the People's appeal of a trial court order directing specific performance of a plea bargain.  In that case, the defendant had waived time for preliminary hearing and filled out a plea form in reliance on the plea offer he had accepted.  After the prosecutor withdrew the offer, the trial court granted defendant's motion for specific enforcement of the agreement.  The Court of Appeal reversed, holding that a defendant is not entitled to specific enforcement of an agreement that is withdrawn before it is accepted in open court, unless there has been detrimental reliance. It found that neither defendant's agreeing to waive time for the preliminary hearing nor his filling out the plea form constituted detrimental reliance, because the form "was not entered in the court records" and defendant "did not make admissions in open court." <u>Id</u>. at 250.  <u>See also</u> <u>People v. Rhoden</u>, 75 Cal.App.4th 1346, 1355-56 (1999) (no error when prosecutor withdrew from plea bargain before defendant pleaded guilty or otherwise detrimentally relied on the bargain even when defendant had filled out the plea form); <u>compare</u> <u>In re Kenneth H.</u>, 80 Cal.App.4th 143

1   (2000) (prosecutor bound by agreement even though it was withdrawn before accepted by the

2   court when minor relied detrimentally on it by taking polygraph).  California law does not

3   advance petitioner's argument.

4           In this case, petitioner began the plea colloquy but did not make any admissions or

5   enter his plea before the proceedings were aborted.  He has not suggested he relied on the

6   agreement in taking any actions to his detriment.  He has not shown an entitlement to relief under

7   federal law nor shown that he had any entitlement under state law to insist on resurrection of the

8   trial court's earlier indicated sentence.

9           Finally, petitioner argues the state trial court had an obligation to ensure that

10  petitioner was able to enter the plea, either by determining whether he could go without his

11  medication or whether he nevertheless understood the nature and consequences of his plea

12  despite his medication.  Mem. P. & A. at 7.  He relies on <u>Moran v. Godinez</u>, 40 F.3d 1567 (9th

13  Cir. 1994), <u>as amended on denial of rehearing</u>, 57 F.3d 690 (9th Cir. 1994).  In <u>Moran</u>, however,

14  the trial court accepted a guilty plea to three counts of capital murder without making any inquiry

15  about the type of medication or its effect on the defendant's ability to understand the plea

16  proceedings after the defendant said he was taking "just what they give me in, you know,

17  medications." <u>Moran</u>, 40 F.3d at 1570.  In the instant case, in contrast, the court asked petitioner

18  about his medications and, when he could not name them, asked counsel.  The court then asked

19  petitioner if the medications interfered with his ability to think clearly; when he said they did, the

20  court declined to accept the plea, a result the <u>Moran</u> court likely would have applauded.  9/7/01

21  RT 8-9.  The <u>Moran</u> court simply does not impose any duty on the trial court to salvage a plea

22  once it decides a criminal defendant's medication might be interfering with his ability to enter a

23  plea.  Moreover, petitioner has not cited and the court has not found any case law requiring a trial

24  court to be proactive in the manner petitioner suggests in order to save a plea agreement.

25  /////

26  /////

1    IV.  Ineffective Assistance Of Counsel

2            The federal law on claims of attorney ineffectiveness is clear:

3            First, the defendant must show that counsel's performance was
             deficient.  This requires showing that counsel made errors so
4            serious that counsel was not functioning as the 'counsel'
             guaranteed by the Sixth Amendment.  Second, the defendant must
5            show that the deficient performance prejudiced the defense.

6    Strickland v. Washington, 466 U.S. 668, 687 (1984).  "[T]he performance inquiry must be

7    whether counsel's assistance was reasonable considering all the circumstances."  Id. at 688.  "We

8    strongly presume that counsel's conduct was within the wide range of reasonable assistance, and

9    that he exercised acceptable professional judgment in all significant decisions made."  Hughes v.

10   Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

11           It is also petitioner's burden to establish prejudice:  "A defendant must show that

12   there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

13   proceeding would have been different.  A reasonable probability is a probability sufficient to

14   undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  A reviewing court "need

15   not determine whether counsel's performance was deficient before examining the prejudice

16   suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

17   ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

18   followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

19   697).

20           A.  Failure To Preserve The Twenty-Two Year Offer/Indicated Sentence

21           As noted, the Supreme Court denied the petition raising this ground with a

22   citation to In re Clark, 5 Cal. 4th 750.  Lodg. Doc. 6.  Here as well, this court declines to reach

23   the procedural issue because in its de novo review of the claim, it finds the claim to be without

24   substance.

25           Petitioner contends trial counsel was ineffective for failing to continue the change

26   of plea hearing in order to secure a "professional medical opinion" on the question "whether

11

1   petitioner could validly enter . . . pleas despite his medication" or ask for a hearing on the

2   question whether the medication affected petitioner's cognitive abilities. . . ."  Mem. P. & A. at

3   12.  He says if such measures had been taken, the offer "likely would have been held open."  Id.

4   Respondent counters that such arguments are based on the sort of hindsight this court may not

5   use in evaluating trial counsel's performance, and that petitioner has not demonstrated prejudice.

6          In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court said:

7               . . . the "prejudice" component of the Strickland test does not
                implicate these concerns.  It focuses on the question whether
8               counsel's deficient performance renders the result of the trial
                unreliable or the proceeding fundamentally unfair.  Unreliability or
9               unfairness does not result if the ineffectiveness of counsel does not
                deprive the defendant of any substantive or procedural right to
10              which the law entitles him.

11  Id. at 372 (internal citations omitted).  Because petitioner has no constitutional right to a plea

12  bargain, counsel's alleged failure to take steps to ensure he received the twenty-two year deal

13  does not satisfy the Strickland standard for prejudice.  See also Post v. Page, 22 F.Supp.2d 887

14  (C.D. Ill. 1998) (counsel's failure to transmit client's offer to the prosecutor not ineffective when

15  there is no right to have his offer accepted).

16         In United States v. Weaver, 882 F.2d 1128, 1137 (7th Cir. 1989), the defendant

17  argued that counsel was ineffective for failing to enforce "an agreement to agree" to a plea

18  bargain.  The Court of Appeals found that counsel was not ineffective, however, because the plea

19  negotiations had not resulted in an enforceable agreement; it noted that "plea negotiations

20  themselves generally cannot be enforced."  In this case as well, counsel's alleged failure does not

21  constitute ineffective assistance because there was nothing enforceable.  See also United States v.

22  Springs, 988 F.2d 746, 749 (7th Cir. 1993) ("The Constitution does not ensure that lawyers will

23  be good negotiators, locking in the best plea bargains available.").

24         Even assuming there was a right to a plea bargain, petitioner has not demonstrated

25  as a factual matter that counsel could have saved the court's willingness to extend its sentencing

26  determination by asking for a hearing on petitioner's ability to enter a plea despite his

1    medications.  The court was adamant that the case settle that day: "you either accept it or you can

2    have your trial."  9/7/01 RT 3.  When petitioner sought to postpone the plea so he could "contact

3    [his] people," the court responded, "we're confirming your matter for trial."  Id.  The prosecutor,

4    who had opposed this resolution, asked "[i]s the Court's offer withdrawn. . . ."  9/7/01 RT 3-4.

5    Petitioner chimed in then and said he would take the twenty-two years.  9/7/01 RT 4.  During the

6    colloquy, when petitioner suggested that "you all" had threatened him, the court reminded him

7    that he could plead that day or go to trial the next month.  9/7/01 RT 8.

8           The tenor of the proceedings on September 7, 2001 suggests the court would not

9    have granted a motion for a hearing and would not have otherwise continued the proceedings to

10    explore the impact of the medication on petitioner's understanding.  If there was an agreement,

11    one of its terms was that it be accepted that day.  Petitioner has not demonstrated his counsel was

12    ineffective for failing to ensure that the twenty-two year offer was accepted.

13              B.  <u>Failure To Investigate Competence To Plead On December 12, 2001</u>

14           Petitioner argues that trial counsel also was ineffective in failing to investigate

15    whether medication rendered petitioner incompetent to enter the no contest pleas on December

16    12, 2001.  Mem. P. & A. at 13.  Because the California Supreme Court did not issue a reasoned

17    denial of this claim, the court undertakes an independent review of this question.  <u>Himes v.</u>

18    <u>Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

19           In <u>United States v. Howard</u>, 381 F.3d 873 (9th Cir. 2004), the Ninth Circuit

20    considered whether the movant in the proceeding under 28 U.S.C. § 2255 had demonstrated his

21    entitlement to an evidentiary hearing on his claim that counsel was ineffective in allowing him to

22    accept a plea agreement while he was incompetent as the result of his use of powerful narcotic

23    pain relievers.

24    /////

25    /////

26    /////

1   The court observed:

2            To establish that his counsel provided ineffective assistance in light
           of Howard's alleged incompetency, Howard must first demonstrate
3            that he was indeed incompetent to plead guilty.

4   Id. at 877-78.  It continued:

5            When a § 2255 petitioner's claim of incompetence due to the
           ingestion of drugs is conclusory or inherently incredible, a district
6            court has the discretion to dismiss the petition without a hearing.
           When the allegations move beyond bald, conclusory or incredible
7            assertions, however, a hearing is required unless the petition, files
           and record conclusively demonstrate that the petitioner was
8            competent to plead guilty.  Specific, credible evidence that an
           individual was under the influence of powerful narcotic drugs
9            suffices to move a claim beyond a bald assertion of incompetence.

10   Id. at 879; see also Miles v. Stainer, 108 F.3d 1109 (9th Cir. 1997) (counsel not ineffective for

11   failing to raise question of petitioner's competence when she had discussed agreement when

12   petitioner was competent and she did not want to jeopardize beneficial plea bargain).

13         In the original findings and recommendations, this court found that petitioner had

14   not presented sufficient evidence of his incompetence at the time he entered his plea.  It relied on

15   the following three factors:  First, during the plea colloquy, petitioner said he was not under the

16   influence of any drugs.  12/12/01 RT 12:6-8.  Second, petitioner had submitted no jail or other

17   medical records showing he was taking any medication, much less medications that might render

18   him incompetent to plead guilty.  Third, petitioner had not submitted his own declaration or any

19   other evidence suggesting he was suffering any confusion or other ill-effects during the plea

20   colloquy so as to undercut his competence to enter the plea.  The court observed that petitioner

21   had presented a copy of an order committing him to a mental hospital after a finding that he was

22   incompetent to stand trial, but noted that the order presented no specifics about petitioner's

23   mental state or any medications he had been prescribed.  The court also noted that petitioner had

24   not presented copies of the actual reports with any recommendations about a medication regime.

25   See Third Am. Pet., Ex. 3.

26   /////

1    In his objections, petitioner points to a state pleading, attached as exhibit four to

2   the Third Amended Petition.  Docket No. 52-7.  In that document, submitted under penalty of

3   perjury, petitioner says:

4         Prior to the plea the Petitioner was on medication and heavly
          susdated on psychologcal medication rendering his judgement at
5         time of the plea.   The Petitioner was transfer from a mental
          hospital to court.  The Petitioner was on Zolloft  Loxapine etc.
6         Counslor fail to show the facts outlineing the case factor . . . .

7   Docket No. 52-7 at 4 (reproduced as in original).  In addition, in the state habeas petition filed

8   under penalty of perjury in the Supreme Court, petitioner said:

9         I was on a great deal of medication :  at the time of this pleading
          . . . Trial counsel coerce his client into a 26 year plea: knowing the
10        Petitioner was druge up.

11        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

13        The Petitioner does not recall how he receive 26 years being he
          was medicated . . . .
14

15  Lodg. Doc. No. 3 at 3, 6 (reproduced as in original).

16        The Supreme Court has said:

17        [T]he representations of the defendant, his lawyer, and the
          prosecutor at such a hearing, as well as any findings made by the
18        judge accepting the plea, constitute a formidable barrier in any
          subsequent collateral proceedings. Solemn declarations in open
19        court carry a strong presumption of verity. The subsequent
          presentation of conclusory allegations unsupported by specifics is
20        subject to summary dismissal . . . .

21  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Petitioner's declaration, submitted in pro per,

22  does not overcome this presumption: it says he was on medication "prior to the plea," but does

23  not specifically say he was still taking the medications at the time of the plea, apart from the

24  ambiguous sentence fragment about his judgment at that time.  In his habeas petition, petitioner

25  does allege that counsel coerced him into a plea, "knowing he was drug[ged] up."  In neither of

26  these pleadings does he specifically aver what, if anything, he told counsel about his medications

1  and his ability to understand the proceedings, and points to nothing in the record of the

2  proceedings immediately before his ultimate plea that could have alerted counsel or the court to

3  his allegedly medicated state.  Moreover, even though the court appointed a lawyer for the

4  current proceedings in this court, counsel has not presented a new declaration or attempted to

5  bolster petitioner's ambiguous declaration with medical records or any suggestion of what impact

6  Zoloft or Loxapine might have had on petitioner's competence to plead no contest.  Petitioner

7  has not overcome the "presumption of verity" of his in-court statements nor the presumption that

8  his lawyer acted competently during the ultimate plea proceedings.  Petitioner is not entitled to

9  relief.

10         IT IS HEREBY ORDERED that the findings and recommendations filed

11 September 14, 2009 (docket no. 72) are hereby vacated.

12         IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

13 habeas corpus be denied.

14         These findings and recommendations are submitted to the United States District

15 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

16 days after being served with these findings and recommendations, any party may file written

17 objections with the court and serve a copy on all parties.  Such a document should be captioned

18 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19 shall be served and filed within ten days after service of the objections.  The parties are advised

20 that failure to file objections within the specified time may waive the right to appeal the District

21 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22 DATED:  December 10, 2009.

23

24

25                                          U.S. MAGISTRATE JUDGE

26 2 lee2197.157(2)